**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-mc-00046-PAB

GOD'S STOREHOUSE TOPEKA CHURCH,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Scott T. Varholak

      This matter comes before the Court on three motions:  Petitioner's Verified Petition to Quash Internal Revenue Service ("IRS") Third-Party Summons (the "Petition") [#1], Respondent's Motion for Summary Denial of Petition to Quash (the "Motion for Summary Denial") [#9], and Petitioner's Motion for Limited Discovery (the "Motion for Discovery") [#27].  These Motions have been referred to this Court.  [##16, 28]  This Court has carefully considered the Petition, the Motions, the related briefing, the entire case file, and the applicable case law, and has heard oral argument on the Petition and the Motion for Summary Denial [#25].  For the following reasons, the Court respectfully **RECOMMENDS** that the Motion for Discovery be **DENIED**, the Motion for Summary Denial be **GRANTED**, and the Petition be **DENIED.**

I.    **BACKGROUND**[1]

Petitioner is a not-for-profit corporation incorporated in the state of Kansas.  [#1, ¶ 5]  Petitioner self-declares as a church for tax purposes.  [#9-1, ¶ 8]  Richard Kloos serves as Petitioner's president and is a member of the Board of Directors.  [#12-1, ¶ 2]  In 2020, Mr. Kloos ran a successful campaign for the Kansas Senate.  [##1, ¶ 11; 9-1, ¶ 12]  During the campaign, Mr. Kloos distributed and posted campaign signs that stated: "Rick Kloos—Kansas Senate," and "Founder of God's Storehouse."  [##1, ¶ 11; 9-1, ¶ 12]

 On February 24, 2021, the Internal Revenue Service (the "IRS") assigned Agent Kesroy Henry to determine whether Petitioner may have engaged in political campaign intervention and if further investigation was warranted.[2]  [#9-1, ¶ 4]  Agent Henry noted that Petitioner operates a thrift store and coffee shop.  [*Id.* at ¶ 8]  He failed to discover any information online about church services held by Petitioner.  [*Id.* at ¶ 9]  Based on his review of Petitioner's records, Agent Henry determined that Petitioner did not withhold and pay to the IRS any employment taxes on the gross wages for either Mr. Kloos or his wife, Pennie Kloos, in 2019 or 2020.  [*Id.* at ¶ 11]

Based on this information and the campaign signs, Agent Henry sought and received approval to open a church tax inquiry[3] from Sunita B. Lough—the Commissioner

---

[1] The factual background is drawn primarily from the investigating IRS agent's affidavit [#9-1] and the Petition [#1].

[2] According to Petitioner, the Freedom From Religion Foundation (the "FFRF") sent a letter (the "FFRF Letter") to the IRS alleging electioneering violations by the Kloos campaign, and citing the campaign signs.  [#1, ¶ 13]  The IRS has "neither confirmed nor denied to Petitioner the existence of the 'FFRF Letter.'"  [#9, 13]  The parties do not dispute that Mr. Kloos's campaign signs were the subject of public news reports.  [##1, ¶ 12 & n.1; 9-1, ¶ 12]

[3] A "church tax inquiry" is "any inquiry to a church (other than an examination) to serve as a basis for determining whether a church[:]  (A) is exempt from tax under section 501(a) by reason of its status as a church[;] or (B) is carrying on an unrelated trade or

of the Tax Exempt and Government Entities Division of the IRS.    [#9-1, ¶¶ 13-14]
Pursuant to this approval, Agent Henry issued to Petitioner a Notice of Church Tax Inquiry
("NCTI").    [*Id.* at ¶ 14]    The NCTI advised Petitioner that the IRS had concerns that
Petitioner:  (1) "was operating a thrift shop rather than a church;" (2) "may have engaged
in prohibited political campaign intervention in 2020;" (3) "may be liable for unrelated
business income tax ("UBIT") from the operation of a coffee shop;" and (4) "may be liable
for additional . . . employment taxes for wages paid to Mr. and Mrs. Kloos."  [*Id.*]  The
NCTI asked Petitioner to respond to a number of questions.  [*Id.*]  Petitioner responded
to the questions and provided copies of various documents.  [*Id.* at ¶ 15]

   After reviewing Petitioner's response, Agent Henry still had concerns about
Petitioner's "tax-exempt status as a church, possible liability for UBIT, and liability for
additional taxes."  [*Id.* at ¶ 16]    He sought and received approval from Commissioner
Lough to begin a church tax examination[4] regarding Petitioner, and issued a Notice of
Church Tax Examination ("NCTE"), which explained the IRS's continued concerns and
provided a description of church records and activities that may need to be examined.
[#9-1, ¶ 17]  After a failed pre-examination conference between the IRS and Petitioner,
the IRS moved forward with the church tax examination.  [*Id.* at ¶ 18]  Agent Henry also
informed Petitioner that the IRS intended to contact third parties as part of its
investigation.  [*Id.* at ¶ 22]

---

business . . . or otherwise engaged in activities which may be subject to taxation under
this title."  26 U.S.C. § 7611(h)(2).
[4] A "church tax examination" is "any examination for purposes of making a determination
[regarding a church's status or tax liabilities] of[:]  (A) church records at the request of the
Internal Revenue Service[;] or (B) the religious activities of any church."  26 U.S.C.
§ 7611(h)(3).

Agent Henry identified that FISERV processed credit card payments for Petitioner, primarily for thrift-store transactions. [*Id.* at ¶ 26] Agent Henry issued a summons to FISERV (the "FISERV Summons"), directing a FISERV representative to produce all documents in FISERV's possession concerning Petitioner's merchant account. [##9-1, ¶ 27; 9-3, 13] To date, FISERV has not complied with the summons, and the documents sought are not otherwise in the possession of the IRS. [#9-1, ¶¶ 31-32]

The IRS gave Petitioner notice of the FISERV Summons. [#9-1, ¶ 29] Petitioner filed the Petition before the Court, seeking to quash the FISERV Summons. [#1] The IRS filed the Motion for Summary Denial. [#9] That Motion has been fully briefed, and both parties have submitted notices of supplemental authority. [##12; 13; 14; 15; 22] On December 21, 2022, this Court heard oral argument on the Petition and Motion for Summary Denial. [#25] Subsequently, Petitioner filed supplemental affidavits of Mr. and Mrs. Kloos [#26], and filed the Motion for Discovery [#27]. That Motion has been fully briefed. [##29, 30]

## II.    Legal Standards

### A.  The IRS's Third-Party Summons Authority and Standard of Review

The IRS is "authorized and required to make the inquires, determinations, and assessments of all taxes" imposed by law. 26 U.S.C. § 6201(a). This includes the ability to "issue summonses '[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . ., or collecting any such liability.'" *United States v. Clarke*, 573 U.S. 248, 250 (2014) (quoting 26 U.S.C. § 7602(a)). "The IRS has authority to issue summonses to the subject taxpayer and to third parties who may have relevant

information." *Standing Akimbo, LLC v. United States*, 955 F.3d 1146, 1154 (10th Cir. 2020) (citing 26 U.S.C. § 7602(a)(2) and *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1181 (10th Cir. 2019)).    In issuing a third-party summons under Section 7602(a)(2), the IRS must follow specific notice procedures prescribed by Section 7609. *See* 26 U.S.C. §§ 7609(c)(1) ("[Subject to exceptions not applicable here], this section shall apply to any summons issued under paragraph (2) of section 7602(a)."). The taxpayer at issue may file a petition to quash the third-party summons in federal court. *Id.* § 7609(b)(2).

The IRS bears the initial burden of showing the summons' prima facie validity in a proceeding on a petition to quash. *High Desert Relief*, 917 F.3d at 1182.  This requires the IRS to make a showing of each of the so-called "*Powell* factors," which require that: (1) "the investigation will be conducted pursuant to a legitimate purpose;"  (2) "the inquiry may be relevant to [that] purpose;" (3) "the information sought is not already within the [IRS's] possession;" and  (4) "the administrative steps required by the Code have been followed—in particular, that the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect." *United States v. Powell*, 379 U.S. 48, 57-58 (1964).[5]  The IRS's initial burden to show "that it meets the *Powell* factors 'is a slight one,' primarily because the tax code 'must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted.'"  *High Desert Relief*, 917 F.3d at 1182 (quoting *United*

---

[5] The IRS also has the threshold burden to show "that [it] has not made a referral of the taxpayer's case to the Justice Department for criminal prosecution." *Anaya v. United States*, 815 F.2d 1373, 1377 (10th Cir. 1987) (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298 (1978).  Agent Henry attests that no such referral has been made [#9-1, ¶ 34], which Petitioner does not dispute [*see generally* #1].

*States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985)). "The requisite [*Powell*] showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement." *Id.* at 1182-83 (quoting *Balanced Fin. Mgmt.*, 769 F.2d at 1443). Upon making this prima facie showing of validity, "[t]he burden then shifts to the taxpayer to factually refute the *Powell* showing or factually support an affirmative defense—conclusory allegations are insufficient." *Standing Akimbo*, 955 F.3d at 1155 (citing *Balanced Fin. Mgmt.*, 769 F.2d at 1444). "This is a heavy burden." *Id.* (citing *Balanced Fin. Mgmt.*, 769 F.2d at 1444).

Because the IRS's Motion for Summary Denial requires the review of declarations and affidavits outside of the Petition, the Court treats the Motion as one for summary judgment under Federal Rule of Civil Procedure 56 and applies the traditional summary-judgment standards in assessing the Motion. *Id.* Accordingly, the Court will "view the record in the light most favorable to [Petitioner] and ask whether the IRS has shown that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Id.* at 1156 (quoting *High Desert Relief*, 917 F.3d at 1181). "Notably, [the] traditional summary-judgment standard of review precludes [Petitioner] from resting on conclusory statements because 'such statements "do not suffice to create genuine issue of material fact."'" *Id.* (first quoting *High Desert Relief*, 917 F.3d at 1181, then quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998)).[6]

---

[6] In *Speidell v. United States*, the Tenth Circuit addressed the argument that the "slight" and "heavy" burden shifting rules announced in *Balanced Financial Management* were incompatible with the applicable summary judgment standards and the United States Supreme Court's ruling in *Clarke*. 978 F.3d 731, 738-39 (10th Cir. 2020). The *Speidell* panel noted that multiple Tenth Circuit panels post-*Clarke* had continued to apply the "slight" and "heavy" framework to a third-party summons proceeding while also relying on traditional summary judgment standards and *Clarke*. *Id.* (citing *Standing Akimbo*, 955

**B.      The Provisions of 28 U.S.C. § 7611 Do Not Apply**

"Section 7611 of the tax code affords churches special protection in the audit context."  *United States v. C.E. Hobbs Found. for Religious Training & Educ., Inc.* ("*Hobbs*"), 7 F.3d 169, 171 (9th Cir. 1993).  Section 7611 creates two distinct levels of investigation into a "church"[7]—a "church tax inquiry" and a "church tax examination."  A church tax inquiry is "any inquiry to a church (other than an examination)" regarding its status as a church or tax liabilities for unrelated trade or business or other activities.  26 U.S.C. § 7611(h)(2).  A church tax inquiry may only begin if "an appropriate high-level Treasury official reasonably believes" that the organization at issue may not really be a church, or that it is incurring tax liability through taxable trade, business, or activities.  *Id.* § 7611(a)(2).  In addition, the IRS must give notice of the church tax inquiry to the church at issue, including an explanation of the IRS's concerns, the general subject matter of the inquiry, and the applicable law governing the inquiry.  *Id.* § 7611(a)(3).

A church tax examination, in turn, is "any examination" of "church records" or "the religious activities or any church" that is undertaken for the same purposes of a church tax inquiry—namely, to determine the status and tax liabilities of a church.  *Id.* § 7611(h)(3).  A church tax examination may only be made, "in the case of church records, to the extent necessary to determine [tax liability]" and, "in the case of religious activities,

---

F.3d at 1154-55, 1157, 1160-61, 1163, 1166 and *High Desert Relief*, 917 F.3d at 1181-84, 1187, 1191, 1194).  The *Speidell* panel ultimately concluded that "*Clarke* does not clearly overrule *Balanced Financial Management*," and that "[b]ecause any tension created by *Clark* is indirect, [courts] must follow . . . circuit precedent"—which includes *Balanced Financial Management*, *Standing Akimbo*, and *High Desert Relief.  Id.* Accordingly, this Court will continue to follow the familiar framework described above.
[7] The statute defines the term "church" to include "any organization claiming to be a church."  26 U.S.C. § 7611(h)(1)(A).

to the extent necessary to determine whether an organization claiming to be a church is a church for any period." *Id.* § 7611(b)(1).  Before initiating a church tax examination, the IRS must provide another notice, which now must include:  a copy of the church tax inquiry notice previously provided, a description of the church records and activities which the IRS seeks to examine, an offer to have a pre-examination conference, and a copy of all documents collected or prepared by the IRS for use in the examination which are disclosable under federal law.  *Id.* § 7611(b)(2).

To summarize, Section 7611 imposes heightened procedural requirements before the IRS may undertake a church tax inquiry or examination.  In addition, it restricts the scope of the IRS's examination into a church, only permitting it to examine records and activities "to the extent necessary" to determine a church's status and tax liability.  *Id.* § 7611(b)(1); s*ee also Hobbs*, 7 F.3d at 172 (holding that satisfying Section 7611's "to the extent necessary" standard "requires something more than a showing of relevance").

Petitioner argues that this third-party summons should be held to these heightened procedures and standards.  [#12, 8-12]  According to Petitioner, the summons at issue must be quashed because the IRS failed to comply with certain procedural requirements imposed by Section 7611, and the IRS has failed to show that the records sought in this third-party summons are "necessary" to its overall investigation into Petitioner.  [*Id.*]

The applicability of Section 7611 to the FISERV Summons is a question of statutory interpretation and therefore a question of law.  *McGraw v. Barnhart*, 450 F.3d 493, 497 (10th Cir. 2006).  "The goal of statutory interpretation is to 'ascertain the congressional intent and give effect to the legislative will.'"  *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018) (quoting *Ribas v. Mukasey*, 545 F.3d 922, 929 (10th Cir. 2008)).

"In conducting this analysis, [courts] first turn to the statute's plain language." *Id.* (citing *United States v. West*, 671 F.3d 1195, 1199 (10th Cir. 2012)).

The Court finds that the requirements of Section 7611 do not apply to this third-party summons. First, the FISERV Summons cannot be considered a "church tax inquiry" under the plain text of the statute, which defines a church tax inquiry as an "inquiry *to a church*." 26 U.S.C. § 7611(h)(2) (emphasis added). Here, as Petitioner acknowledges, "FISERV is the party summoned"—not Petitioner. [#1, ¶ 8]

Next, the FISERV Summons does not constitute a "church tax examination" under the statute's plain text. A church tax examination is broadly defined as "any examination" by the IRS of "church records" or "religious activities" undertaken "for purposes of making a determination" of a church's status or tax liability. 26 U.S.C. § 7611(h)(3). "Church records" are defined as "all corporate and financial records regularly kept by a church." *Id.* § 7611(h)(4). As an initial matter, the Court notes that the FISERV records at issue here are kept by FISERV, not Petitioner. It is therefore not clear to the Court that such records fall within even the basic statutory definition of "church records." Any such doubts need not be resolved, however, because the basic definition of "church records" contains an explicit statutory exception for the records at issue in this case, stating that: "[Church records] shall not include records acquired . . . pursuant to a summons to which [S]ection 7609 applies." *Id.* § 7611(4)(B)(i). As discussed above, Section 7609 provides the applicable procedures for various third-party summonses, including "any summons issued under [Section 7602(a)(2)]," such as the FISERV Summons. *Id.* § 7609(c)(1). Accordingly, the FISERV Summons does not constitute an "examination . . . of church records" under Section 7611.

Nor does the FISERV Summons constitute an "examination [of] . . . religious activities." *Id.* § 7611. The term "religious activities" is not defined by the statute, so the Court gives the phrase its "ordinary meaning[], considering 'both the specific context in which the [term] is used and the broader context of the statute as a whole.'" *In re Taylor*, 899 F.3d at 1129 (quoting *United States v. Theis*, 853 F.3d 1178, 1181 (10th Cir. 2017)). The FISERV Summons relates solely to Petitioner's account-related transactions with its credit card processor. [*See* #9-3 at 13 (requesting all documents possessed by FISERV "concerning [Petitioner's] merchant accounts," including "requests for payment processing and payment activity," "correspondence . . . relating to the account(s)," "[m]erchant account statements," and "[c]harge-back records")] Particularly in light of the statutory distinction between "church records" and "religious activities," 26 U.S.C. § 7611(b)(1), and the fact that "church records" are specifically defined as "corporate and financial records," *id.* § 7611(h)(4), the Court finds that the financial and account related documents requested through the FISERV Summons fall clearly outside of the ordinary meaning of "religious activities." This becomes especially apparent when the financial records sought by the FISERV Summons are compared to some of the other information that has been provided to the IRS over the course of this investigation, including: "a summary of [Petitioner's] religious beliefs;" "information concerning [Petitioner's] regularly scheduled worship services;" "service dates for the last two years and order of worship;" and "information providing the number of funerals administered during 2019 and 2020 with sample obituaries and service documents." [#1, ¶ 35]

Petitioner argues in a footnote in its briefing, and more extensively at oral argument, that the FISERV Summons constitutes an examination of Petitioner's religious

activities because the IRS is ultimately interested, in part, in Petitioner's status as a church which, in turn, requires an examination of religious activities.  [##12, 11 n.4; 31, 4:11-7:15]  As discussed below, the Court agrees that the FISERV Summons may shed light onto Petitioner's status as a church.  Nonetheless, the ultimate reason for the IRS's investigation into Petitioner does not impact the statutory classification of the actual subject matter sought via the third-party FISERV Summons.  Here, that subject matter is financial documents held by a credit card processor.  An examination of such documents, even if later relevant to understanding Petitioner's status as a church, is not *itself* an "examination . . . of religious activities."    26  U.S.C.  §  7611(h)(3).    Petitioner's interpretation would negate the separate statutory categories of "church records" and "religious activities" whenever the IRS was interested in a church's status, and thereby make the statute's exception of "records acquired pursuant to a [third-party] summons" largely meaningless.  *Id.*, § 7611(h)(4)(B)(i); *see also Bridger Coal Co./Pac. Mins., Inc. v. Dir., Off. of Workers' Comp. Programs*, 927 F.2d 1150, 1153 (10th Cir. 1991) ("We will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous.").  Accordingly, because the FISERV Summons seeks to examine neither "church records" (as specifically defined by the statute) nor "religious activities" (as ordinarily understood), it is not governed by Section 7611.

This conclusion is supported by the only other courts to have considered this issue.  In *Hobbs*, the IRS issued a third-party summons to a putative church's bank in relation to the IRS's investigation into whether the organization was actually operating as a church.  7 F.3d at 171.  Prior to issuing the third-party summons, the IRS had initiated a church tax inquiry and a church tax examination.  *Id.* at 170-71.  The IRS argued to the Ninth

Circuit that "summonses issued to third party record keepers are not subject to the provisions of 26 U.S.C. § 7611." *Id.* at 173. After citing the statutory exclusion for "records acquired 'pursuant to a summons to which [S]ection 7609 applies,'" the Ninth Circuit held that "the IRS is clearly correct," and that the third-party summons at issue "[wa]s not governed by [S]ection 7611." *Id.* (quoting 26 U.S.C. § 7611(h)(4)(B)(i)). This was true even when "the principal . . . purpose of the IRS investigation [wa]s to determine whether the Foundation [wa]s in fact a church, rather than a [non-exempt organization]." *Id.*

Similarly, in *Bible Study Time, Inc. v. United States*, the IRS issued summonses to eight banks as part of the IRS's investigation into "whether [an organization's] recent claim of church status was warranted." 240 F. Supp. 3d 409, 412, 416-17 (D.S.C. 2017). Before issuing the summonses, the IRS pursued both a church tax inquiry and a church tax examination. *Id.* at 417. The district court explained that "church tax inquiries and church tax examinations are two distinct investigatory 'tools' used for the same purpose and are directed *to* the church or *to* records in the church's custody (as opposed to church-related records held by a third party)." *Id.* at 420. Because third-party summonses are not directed to the church or to church records, the court concluded that "[t]hird-party summonses are governed by Section 7609, not Section 7611, even when the summons is issued in connection with a church tax inquiry." *Id.* (citing *Hobbs*, 7 F.3d at 173).[8]

---

[8] The Court further notes that Petitioner filed, in the District of Kansas, a petition to quash a separate third-party summons issued in relationship to the same investigation of Petitioner. *God's Storehouse Topeka Church v. United States*, No. 22-CV-04014-DDC-TJJ, 2022 WL 17830849 (D. Kan. Oct. 7, 2022). That petition and the IRS's motion to summarily deny the petition were referred to United States Magistrate Judge Teresa J. James. *See id.* Considering the same arguments that this Court considers here, Judge James concluded that "the third-party recordkeeper summons at issue falls within the § 7611(h)(4)(B)(i) statutory exception to 'church records,' and therefore must be analyzed under the *Powell* factors and not the heightened 'to the extent necessary' relevancy

Petitioner cites *United States v. Church of Scientology of Boston, Inc.*, 933 F.2d 1074 (1st Cir. 1991), in support of its argument that the FISERV Summons should be governed by Section 7611.  [#12, 12]  This reliance is misplaced.  In that case, the IRS sought "to enforce a summons for church records" that was served on the secretary of the church.  933 F.2d at 1075, 1080.  Thus, the parties did not dispute that Section 7611 applied as opposed to Section 7609, and the court did not address the issue.  *Id.* at 1076; *see also* 26 U.S.C. § 7609(c)(2)(A) ("[Section 7609] shall not apply to any summons . . . served on the person with respect to whose liability the summons is issued, or any officer or employee of such person.").

Instead of relying on the statute's plain text and the cases that have directly interpreted it, Petitioner relies primarily on Section 7611's legislative history to support its argument that Section 7611 governs the FISERV Summons.  [#12, 8-10]  As an initial matter, legislative history is only to be turned to "cautiously," and only after "exhaust[ing] the traditional tools of statutory interpretation"—which, in this case, favor the IRS.  *Kan. Nat. Res. Coal. v. United States Dep't of Interior*, 971 F.3d 1222, 1237 (10th Cir. 2020).  Moreover, the legislative history of Section 7611 quite plainly supports the IRS's position.  The only legislative history cited by Petitioner that directly addresses the statute's applicability to third-party summonses comes from the 1984 Joint Explanatory Statement of the Committee of Conference.  H.R. Conf. Rep. No. 98-861 at 1106 (1986).  The relevant paragraphs read, in their entirety:

> Records held by third parties (e.g., cancelled checks or other records in the possession of a bank) are not considered church records for purposes

---

standard provided in § 7611(b)(1)(A)."  *Id.* at *7.  Petitioner has filed objections to Judge James' recommendation, and no ruling on the recommendation has been issued.  [*See* #15]

of the conference agreement. Thus, subject to the general code provisions regarding third party summonses, the IRS is permitted access to such records without regard to the requirements of the church audit procedures (Sec. 7609). As under present law, either the IRS or a third party recordkeeper generally is required, however, to inform a church of any IRS requests for materials.

The Conference Agreement provides that the IRS may not determine that a church is not entitled to an exemption or assess tax for unrelated business income against a church solely on the basis of third party records, without complying with the church audit procedures. This limitation does not apply to assessments of tax other than for unrelated business income (e.g., for social security or other employment taxes). The conferees further intend that the IRS will be prohibited from using information obtained from third party bank records to avoid the purposes of the church audit procedures.

*Id.* The first paragraph explicitly clarifies that, as understood by those writing the Conference Agreement, "the IRS is permitted access to [records held by third parties] without regard to the requirements of the church audit procedures." *Id.* The second paragraph does not contradict this, but simply states the Conferees' intention that the IRS rely on more than simply third-party records not subject to Section 7611's restrictions in altering a church's status or liability for unrelated business income. Contrary to Petitioner's argument, however, Congress did not codify this legislative intention through subjecting third-party summonses to the strictures of Section 7611—as the plain text of the statute makes clear.[9]

The thrust of Petitioner's remaining argument is that permitting the IRS to access third-party records subject only to the restrictions and procedures of Section 7609 allows

---

[9] Instead, Section 7611 appears to enact this intention by providing that the IRS "may [revoke a church's tax-exempt status, send a notice of tax deficiency, or assess any underpayment of tax] only if the appropriate regional counsel of the [IRS] determines in writing that there has been substantial compliance with the requirements of [Section 7611] and approves in writing of such revocation, notice of deficiency, or assessment." 26 U.S.C. § 7611(d).

the IRS to perform an end-run around Section 7611, thereby defeating Section 7611's purpose of protecting churches from intrusive tax examinations.  [#12, 8-11]  But, as with any statute, Section 7611 reflects a legislative balance—here, between allowing the IRS to effectively perform its statutorily mandated investigative duties, while providing heightened protections to churches in light of their unique social and constitutional status. As the plain text of Section 7611 makes clear, Congress struck this balance by placing certain restrictions on the IRS's ability to make an inquiry *to* a church and examine the church's records and religious activities, while specifically exempting from those restrictions summonses made to third-party recordkeepers such as FISERV.  In the absence of a clear challenge to Section 7611's constitutionality, Petitioner's argument that this arrangement allows "the IRS [to] essentially bypass[] the constitutional safeguards afforded [to churches] under § 7611" [*id.* at 8], is one to be taken up in the halls of Congress, not a courtroom.

## III.    APPLICATION

For the reasons discussed above, the Court will analyze the legitimacy of the FISERV Summons under the standard *Powell* factors and the provisions of Section 7609. Again, to establish the prima facie validity of a third-party summons, the IRS must make a showing that:  (1) "the investigation will be conducted pursuant to a legitimate purpose;" (2) "the inquiry may be relevant to [that] purpose;" (3) "the information sought is not already within the [IRS's] possession;" and  (4) "the administrative steps required by the Code have been followed—in particular, that the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect."  *Powell*, 379 U.S. at 57-58.  This initial showing is

generally made by affidavit of the agent who issued the summons. *High Desert Relief*, 917 F.3d at 1182-83. Upon the making of this initial showing, the burden shifts to Petitioner to factually refute the *Powell* showing or factually support an affirmative defense. *Standing Akimbo*, 955 F.3d at 1155. "[C]onclusory allegations are insufficient." *Id.*

### A.    Legitimate Purpose

First, the IRS has made a showing that the FIRSERV Summons was issued for a legitimate purpose. According to Agent Henry's Affidavit, he issued the FISERV Summons in order to assist in "determin[ing] whether Petitioner was operating as a thrift shop rather than as a church or whether Petitioner may have unrelated business income and therefore may be liable for [additional taxes]." [#9-1, ¶ 33] In addition, Agent Henry attested that the FISERV Summons could lead to information that would assist the IRS in "determine[ing] whether Petitioner may have engaged in prohibited political campaign intervention in 2020, may have unrelated business income and therefore may be liable for [additional taxes] from the operation of a coffee shop in 2019 and 2020, and may be liable for additional . . . employment taxes for wages paid to Mr. and Mrs. Kloos in 2019 and 2020." [*Id.*] To summarize, Agent Henry attests that he issued the FISERV Summons in order to assist in determining whether Petitioner is properly classified as a tax-exempt church, engaged in prohibited political intervention, or is liable for unreported taxes.

These purposes are plainly proper. *See Clarke*, 573 U.S. at 250 (emphasizing that the IRS has "broad latitude to issues summonses 'for the purpose of ascertaining the correctness of any return [and] determining the liability of any person for any internal

revenue tax'" (quoting 26 U.S.C. § 7602(a)).   Accordingly, the Court finds that Agent Henry's Affidavit makes an adequate prima facie showing that the FISERV Summons was issued for a legitimate, statutorily authorized purpose.

Petitioner argues that the IRS's purpose is improper because:  Petitioner is a church [#12, 16-17], churches may operate thrift-stores and remain tax-exempt [*id.* at 17-18], Petitioner does not owe additional employment taxes because Mr. and Mrs. Kloos are pastors of a church [*id.* at 18-20], any coffee sold by Petitioner is sold at-cost and not subject to tax [*id.* at 20-21], and Petitioner did not engage in inappropriate political intervention [*id.* at 13-15].  This may all be so, but such arguments regarding the merits of the IRS's underlying investigation misunderstand IRS investigations and a court's role in the investigatory process.  "The purpose of a summons is 'not to accuse,' much less to adjudicate, but only 'to inquire.'"   *Clarke*, 573 U.S. at 254 (quoting *United States v. Bisceglia*, 420 U.S. 141, 146 (1975)).  The United States Supreme Court has analogized the IRS's investigatory power "to [that of] the Grand Jury, which . . . can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."  *Powell*, 379 U.S. at 57 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)).  The Court expressly rejected a requirement that the IRS make "some showing of cause for suspecting fraud" before issuing a third-party summons, explaining that such a requirement "might seriously hamper the [IRS] in carrying out investigations [it] thinks warranted, forcing [it] to litigate and prosecute appeals on the very subject which [it] desires to investigate."  *Powell*, 379 U.S. at 53-54.  Accordingly, courts "may ask only whether the IRS issues a summons in good faith [as determined under the *Powell* factors], and must eschew any broader role of 'oversee[ing] the [IRS's]

determinations to investigate.'" *Clarke*, 573 U.S. at 254 (quoting *Powell*, 379 U.S. at 56). To that end, courts are not permitted to adopt "rules that would 'thwart and defeat the [IRS's] appropriate investigatory powers.'" *Id.* (quoting *Donaldson v. United States*, 400 U.S. 517, 527 (1971)). Adopting a rule that an IRS summons is improper because the taxpayer attests that the investigation will be fruitless would plainly thwart the IRS's ability to conduct appropriate investigations. Here, it is well within the IRS's investigatory powers to inquire into Petitioner's status as a church, liability for UBIT and employment taxes, and Petitioner's possible political activities. The Court declines Petitioner's invitation to adjudicate the ultimate merits of the IRS's investigation while it is still underway.[10] *See Powell*, 379 U.S. at 53-54.

Petitioner also asserts a factual challenge to the IRS's prima facie showing of proper purpose. Specifically, Petitioner alleges that the IRS initiated its investigation into Petitioner upon receipt of the FFRF Letter, which was sent by a "political opponent[]" of Mr. Kloos's. [#1, ¶¶ 13-14, 50] Based on this allegation, Petitioner asserts that "the IRS

---

[10] Petitioner similarly asks the Court to make a number of "inferences" in its favor under the summary judgment standard. [#12, 6-7] Some of these proposed "inferences" are simply conclusory allegations. [*See, e.g.*, *id.* at 7 ("[T]he Court should infer that [Petitioner] is in fact a 'church' for tax law purposes.")] More fundamentally, these proposed inferences miss the point. At this stage, the Court's task is to evaluate the IRS's good faith in undertaking the investigation, as measured by the *Powell* factors. Notably, the IRS's likelihood of successfully uncovering wrongdoing is not a *Powell* factor. Accordingly, Petitioner's proposed "inferences," all (but one) of which relate to the merits of the IRS's ongoing investigation as opposed to the IRS's good faith in undertaking the investigation, are immaterial to the analysis at hand. The only non-conclusory inference sought by Petitioner possibly relevant to this analysis is that "the IRS had access to all of the campaigns [sic] expenditure information through the Kansas Governmental Ethics Commission website." [*Id.* at 7] But, as discussed below, the IRS is permitted to gather relevant information from multiple sources as part of a thorough investigation.

is carrying out political retribution goals rather than legitimate tax enforcement and compliance." [*Id.* at ¶ 52]

The Court finds that Petitioner has made a valid factual allegation that the FFRF sent a letter to the IRS requesting that the IRS investigate Petitioner on various grounds. And it may be that *the FFRF* acted with political motivations in notifying the IRS of Petitioner's potential tax violations. But Petitioner's allegation that *the IRS* acted with the same political purpose in undertaking an investigation into Petitioner's status and tax liability is conclusory. As Petitioner concedes, "[s]imply responding to [a] tip from [a political enemy] does not suggest an illegitimate purpose or improper motive on the part of the IRS. . . . [The IRS] cannot—and should not—simply refuse to examine churches." [#27, 5] The Court agrees, and finds that Petitioner's allegation that the IRS received a politically motivated tip regarding Petitioner does not meet Petitioner's "heavy burden" to factually refute the IRS's prima facie showing of a proper purpose. *Standing Akimbo*, 955 F.3d at 1155.

For similar reasons, the Court finds that Petitioner has not established an entitlement to discovery in this matter. Petitioner requests to undertake fairly extensive discovery in this matter in order to "substantiate its belief" that the IRS initiated this investigation for an improper purpose. [#27, 1] Specifically, Petitioner seeks to submit requests for production and written interrogatories to the IRS, and to depose Agent Henry, IRS employee Mary Epps, former IRS Commissioner for the Tax Exempt and Government Entities Division Sunita Lough, and current IRS Commissioner of the Tax Exempt and Government Entities Division Edward Killen. [*Id.*]

In light of the investigative (as opposed to adjudicative or accusatory) purposes of a summons, "summons enforcement proceedings are to be 'summary in nature.'" *Clarke*, 573 U.S. at 254 (quoting *United States v. Stuart*, 489 U.S. 353, 369 (1989)); *see also High Desert Relief, Inc.*, 917 F.3d at 1181 (10th Cir. 2019) ("The proceedings associated with [a petition to quash a third-party summons] 'should be summary in nature and discovery should be limited.'" (quoting *Stuart*, 489 U.S. at 369)). Nonetheless, a "taxpayer is entitled to [some degree of discovery] when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge." Clarke, 573 U.S. at 254. The Tenth Circuit has explained that meeting this standard requires a "substantial preliminary showing" by the taxpayer that it has met its "'heavy' burden . . . 'to factually refute the *Powell* showing or factually support an affirmative defense.'" *Speidell v. United States*, 978 F.3d 731, 738 (10th Cir. 2020) (quoting *Standing Akimbo*, 955 F.3d at 1155)).[11]

Here, again, Petitioner has not pointed to specific facts or circumstances that plausibly impute any improper political motive to the IRS based on the alleged receipt of the FFRF letter.[12] Petitioner's assertions that the FFRF is "set[ting] the IRS's agenda" for

---

[11] Again, the Tenth Circuit in *Speidell* addressed the argument that this standard was incompatible with the standard provided by the United State Supreme Court in *Clarke*. 978 F.3d at 738-39. The Tenth Circuit explained that *Clarke* did not overrule or invalidate any Tenth Circuit precedent, meaning that this Court "must follow . . . circuit precedent." *Id.* at 739.

[12] Petitioner cites to nearly decade-old findings by the United States House of Representatives and the Treasure Inspector General for Tax Administration that one specific former IRS official had used her influence to improperly target organizations for partisan purposes. [#27, 7] That former official has no apparent or alleged connection to the investigation at issue, and the Court declines to find that a congressional or agency finding of bad faith by a former agency official imputes a reasonable inference of bad faith

investigations or is otherwise "weaponiz[ing] [the IRS] for partisan, anti-religious purposes" are purely speculation. [#27 at 6] Such conclusory allegations fail to give rise to a plausible inference that the IRS is operating for reasons other than accurate enforcement of the tax laws, and therefore do not entitle Petitioner to the discovery it requests. Accordingly, the Court RECOMMENDS that Plaintiff's Motion for Limited Discovery [#27] be DENIED.

### B. Relevance

Next, the IRS must make a showing that the summons at issue "may be relevant to [the IRS's] purpose." *Powell*, 379 U.S. at 57; *see also* 26 U.S.C. § 7602(a)(2) (authorizing the IRS to issue third-party summonses "as *may be* relevant or material to" an investigation (emphasis added)). "The IRS has authority to summon information 'of even *potential* relevance to an ongoing investigation.'" *Standing Akimbo*, 955 F.3d at 1160 (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984)) (emphasis in original). This is a low standard that does not require the IRS "to establish that the documents it seeks are actually relevant in any technical, evidentiary sense," as the IRS

---

to the entire agency nearly a decade later. In addition, Petitioner argues that the IRS has pointed to no basis for forming a "reasonable belief" that Petitioner may not be entitled to its claimed tax exemptions or may owe additional taxes, meaning that it must be operating for an improper purpose. [#27, 6-7] But this "reasonable belief" requirement is associated with Section 7611 which, as discussed above, does not govern this proceeding. Moreover, the Court disagrees with Petitioner's premise. According to Agent Henry's Affidavit, he could not find any information about church services held by Petitioner or other indications of Petitioner's religious beliefs or practices, but instead found information relating to Petitioner's thrift store and coffee shop operations. [#9-1, ¶¶ 8-9] In addition, Mr. Kloos's campaign signs, which explicitly connected him to Petitioner, were the subject of media attention. [*Id.* at ¶ 12] These facts could support a reasonable belief that Petitioner *may* be improperly classified or *may* owe additional taxes, which is all that Section 7611 requires, even if that Section did apply. 26 U.S.C. § 7611(a)(2).

"can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized." *Arthur Young & Co.*, 465 U.S. at 814.

Agent Henry attests that the records sought from FISERV, which "process[es] credit card payments for Petitioner, primarily for transactions at the thrift store," "may be relevant to determine whether Petitioner was operating as a thrift store rather than as a church or whether Petitioner may have unrelated business income and therefore may be liable for UBIT." [#9-1, ¶¶ 26, 33] In addition, Agent Henry attests that "the information may be relevant to identifying bank accounts used by Petitioner," which "in turn may also be relevant to determine whether Petitioner may have engaged in prohibited political campaign intervention in 2020, may . . . be liable for UBIT from the operation of a coffee shop in 2019 and 2020, and may be liable for additional . . . employment taxes for wages paid to Mr. and Mrs. Kloos in 2019 and 2020." [*Id.* at ¶ 33]

Initially, Petitioner argues that the information sought by the FISERV Summons is not relevant as to any of the IRS's proffered purposes because Petitioner has already provided sufficient information to the IRS for the IRS to conclude that Petitioner is a church and that Petitioner has properly paid all taxes owed. [#12, 15-17, 19, 21] This misses the point. Whether the IRS already has certain information that may assist it in its investigation has little to do with whether the summonsed information may also be relevant to the IRS's investigation. Redundant information may very well be relevant. This is verified by the *Powell* analysis, which asks—separately from the information's relevance—whether the IRS already possesses the information sought. *Powell*, 379 U.S. at 57-58. And, as explained by a district court confronted with a similar argument, "the IRS is not required to rely on Petitioner's claim that [it] has provided the agency with

everything it needs to know" in order to complete its investigation. *Zietzke v. United States*, 426 F. Supp. 3d 758, 766 (W.D. Wash. 2019); *see also Standing Akimbo*, 955 F.3d at 1160 (holding that the IRS established its good faith under the *Powell* analysis even though petitioners argued that they "ha[d] already produced 'voluminous' records for [the investigating agent's] inspection, giving him enough information to complete his audit"); *Sterling Trading, LLC v. United States*, 553 F. Supp. 2d 1152, 1161 & n.5 (C.D. Cal. 2008) (explaining that, as part of a "thorough investigation," the IRS could review a third-party recordkeeper's documents against those provided by another source "in order to ascertain whether the information in each set of documents is consistent" (quotation omitted)). Petitioner cites no contrary authority for its argument that information loses its relevance simply because the taxpayer has provided information that it believes to be sufficient for the IRS to complete its investigation, and the Court finds none. Accordingly, the Court finds that Petitioner's prior disclosures to the IRS, ample as they may be, do not suffice to defeat the IRS's prima facie showing of relevance. The Court thus turns to the relevance grounds asserted by Agent Henry.

i.   **Political Campaign Intervention and Unrelated Business Income Related to Petitioner's Coffee Shop**

Agent Henry attests that the FISERV Summons is relevant to the IRS's investigation into Petitioner's political activities because it could lead to the discovery of new bank accounts, which could reveal relevant information regarding whether Petitioner engaged in political campaign intervention or has tax liabilities arising from its operation of a coffee shop. [#9-1, ¶ 33] The Court finds that this makes the required prima facie showing that the information sought by the FISERV Summons is potentially relevant to the IRS's investigation. Petitioner counters that the IRS already has all of the information

it needs to determine that Petitioner did not purchase or contribute to the campaign signs at issue, and that Petitioner's coffee shop operation does not result in any tax liability. [#12, 14-15, 21]  Petitioner points to the public records available regarding Mr. Kloos' campaign contributions, and the information that Petitioner has already provided regarding the coffee shop's financial transactions.  [*Id.*]  But, for the reasons discussed above, Petitioner's assertions that the IRS already has sufficient information to make its determinations do not defeat the IRS's prima facie showing of relevance.  Accordingly, the Court determines that the IRS has met its burden to make a prima facie showing of relevance as to its investigation of Petitioner's political activity and coffee shop operations, which Petitioner has failed to rebut.

### ii.    Petitioner's Status as a Church and Petitioner's Employment Tax Withholding

Agent Henry attests that FISERV primarily processes credit card transactions related to Petitioner's thrift store operations.  [#9-1, ¶ 26]  Accordingly, Agent Henry attests that these financial records are relevant to the IRS's investigation into whether Petitioner is operating as a thrift store rather than a church and whether Petitioner has correctly withheld Mr. and Mrs. Kloos's employment taxes.  [*Id.* at ¶ 33]

Petitioner argues that the IRS's fourteen criteria for determining whether an organization qualifies as a church does not contain any consideration of financial documents, meaning that financial documents are not relevant to the IRS's investigation into Petitioner's status.  [#12, 17][13]  But courts have described these criteria as—at

---

[13] Petitioner is referencing the following fourteen criteria first addressed in a 1978 speech by then-IRS Commissioner Jerome Kurtz:  (1) a distinct legal existence; (2) a recognized creed and form of worship; (3) a definite and distinct ecclesiastical government; (4) a formal code of doctrine and discipline; (5) a distinct religious history; (6) a membership not associated with any other church or denomination; (7) an organization of ordained

most—a helpful guide to be applied with flexibility, and rejected the notion that they are determinative. *See, e.g.*, *Found. of Hum. Understanding v. United States*, 614 F.3d 1383, 1387-88 & n.2 (Fed. Cir. 2010) ("[C]ourts have generally declined to accept the [fourteen] criteria as a definitive test for whether an institution qualifies as a church."); *Spiritual Outreach Soc. v. United States*, 927 F.2d 335, 339 (8th Cir. 1991) ("[W]e view the fourteen criteria as a guide, helpful in deciding what constitutes a church."). As Petitioner itself acknowledges, the "IRS uses these criteria *along with other facts and circumstances* to determine whether an organization is a church for federal tax purposes."  [#1, ¶ 32 (emphasis added)]   Here, the concern is that Petitioner is operating as a thrift store instead of a church.  It is reasonable to believe that Petitioner's retail transactions and records may shed light on some fact or circumstance relevant to that inquiry.  Accordingly, the Court finds that the IRS has made its prima facie showing that the information sought through the FISERV Summons meets the low threshold of relevance regarding the IRS's investigation of whether Petitioner is operating as a thrift store or a church.[14]

Petitioner next argues that its thrift store transactions and records are not relevant to the IRS's investigation because operating a thrift store does not jeopardize Petitioner's status as a church.  [#12, 17-18]  According to Petitioner, an organization operating as a church may simultaneously operate a thrift store and still qualify as a church for tax

---

ministers; (8) ordained ministers selected after completing prescribed studies; (9) a literature of its own; (10) established places of worship; (11) regular congregations; (12) regular religious services; (13) Sunday schools for religious instruction of the young; and (14) schools for the preparation of its ministers.  *See Found. of Hum. Understanding v. United States*, 614 F.3d 1383, 1387 & n.2 (Fed. Cir. 2010).

[14] Petitioner again argues that it has provided all of the information needed for the IRS to determine that Petitioner is a church.  [#12, 16-17]  For the reasons discussed above, this does not defeat the IRS's prima facie showing of relevance.

purposes.  [*Id.*]  This argument misses the thrust of the IRS's investigation.  The IRS is investigating whether Petitioner qualifies as a church at all—that is, whether it is "operating as a thrift store *rather than* as a church."  [#9-1, ¶¶ 14, 33 (emphasis added)]  If so, then tax classification consequences follow.[15]  Accordingly, the Court finds that an investigation into Petitioner's thrift store transactions is relevant to the IRS's investigation into Petitioner's status as a church.

For the same reason, the Court finds that the FISERV Summons is relevant to the IRS's purpose of determining the correctness of Petitioner's employment tax withholding. This question, in large part, revolves around Petitioner's status as a church. Petitioner argues that it "correctly filed its employment tax returns" because Mr. and Mrs. Kloos "are the pastors of [a church] and are clergy engaged in the exercise of ministry."  [#12, 19] But, if Petitioner is a thrift store rather than a church, as the IRS is investigating, then the clergy exception that Petitioner relies upon would not apply.

Finally, Petitioner briefly argues that any additional employment taxes owed by Mr. and Mrs. Kloos would be their own individual tax liabilities, not a liability on the part of Petitioner.  [#12, 20]  The IRS appears to dispute this, but not directly.  [*See* #13, 8

---

[15] Petitioner appears to argue that, even if Petitioner was not a church but only a thrift store, then this would not alter its tax liability.  [#12, 18]  This issue is not well-briefed.  But the Court is satisfied that—at a minimum—Petitioner would be required to apply and receive approval for tax-exempt status, as opposed to self-declaring, if it does not operate as a church but only a donation-based thrift store.  [*See* ##12, 15-16 (acknowledging that Petitioner "self-declar[es]" as a church, as opposed to filing an application, pursuant to an exemption specifically available to churches"); 13, 4 n.3 (pointing out that, if Petitioner is only a thrift store, it would need to apply for tax-exempt status and be subject to different reporting requirements)]  Moreover, this change in classification would also appear to impact Mr. and Mrs. Kloos's status as pastors of Petitioner and Petitioner's ability to not withhold Mr. and Mrs. Kloos's employment taxes, thereby impacting the correctness of Petitioner's returns.  [#12, 19 (arguing that Petitioner did not withhold employment taxes for Mr. and Mrs. Kloos "because they are pastors of [a church]")]

(arguing that, if Petitioner is not a church then "Petitioner would have to pay employment taxes with respect to [Mr. Kloos]")]  Regardless, the IRS is tasked with "ascertaining the correctness of any return" and may issue a third-party summons in furtherance of this responsibility.  *Clarke*, 573 U.S. at 250 (quoting 26 U.S.C. § 7602(a)).  Here, the IRS is seeking to ascertain the correctness of Petitioner's Form 941 and Petitioner's employment tax withholding.  This falls within the IRS's statutory responsibilities, and the FISERV Summons is relevant to this investigation.

### C.      The IRS's Possession of the Information

The third *Powell* factor asks whether the IRS already possesses the information in the summons.  *Powell*, 379 U.S. at 57-58.  Agent Henry attests that "[t]he books, papers, records, and other data sought by the [FISERV Summons] are not in the possession of the IRS."  [#9-1, ¶ 32]  Petitioner does not clearly challenge the IRS's showing under this *Powell* factor.[16]   [*See* ##1, ¶ 21 ("The [FISERV Summons] is invalid and should be quashed because it fails at least three of the four *Powell* criteria."); 12, 12-24 (challenging the purpose, relevance, and administrative step prongs, but never directly addressing whether the IRS already possessed the information sought)]  Accordingly, the Court finds

---

[16] As discussed above, Petitioner consistently argues in challenging the FISERV Summons's relevance that Petitioner has already produced sufficient information for the IRS to make the determinations at issue, without the FISERV Summons.  To the extent that this argument should be construed as challenging whether the IRS already possesses the information sought, the Court comes to the same basic conclusion: "[T]he IRS is not required to rely on Petitioner's claim that [it] has provided the agency with everything it needs to know" in order to complete its investigation.  *Zietzke*, 426 F. Supp. at 766; *see also Standing Akimbo*, 955 F.3d at 1160 (holding that the IRS satisfied the third *Powell* factor through an affidavit of the investigating agent even though petitioners argued that they "ha[d] already produced 'voluminous' records for [the investigating agent's] inspection, giving him enough information to complete his audit").

that the IRS has made a prima facie showing that it does not possess the information in the summons, which Petitioner has failed to rebut.

### D.    Administrative Steps

The fourth *Powell* factor asks whether "the administrative steps required by the Code have been followed."   *Powell*, 379 U.S. at 58.   Agent Henry attests that "[a]ll administrative steps required by the Internal Revenue Code for the issuance of the summons have been followed."  [#9-1, ¶ 35]  Petitioner makes two challenges to Agent Henry's assertion and this final *Powell* factor.  First, Petitioner argues that the IRS failed to secure the approval of "an appropriate high-level Treasury official," as required by Section 7611(a)(2), before beginning its church tax inquiry.  [#12, 22-23]  Next, Petitioner argues that the IRS failed to produce the FFRF letter in its notice of church tax examination, violating the requirement of Section 7611(b)(3)(A)(iv) that the IRS provide "a copy of all documents which were collected or prepared by the [IRS] for use in [the church tax examination]."  [#12, 23-24]

The Court need not decide whether the IRS's actions in initiating the church tax inquiry or providing notice of the church tax examination were proper under Section 7611. As discussed at length above, the FISERV Summons is not subject to the heightened procedural requirements of Section 7611.  Accordingly, the administrative steps that the IRS took in initiating its church tax inquiry or examination are irrelevant to determining whether the IRS followed the proper administrative steps in issuing this third-party summons.  *See Bible Study Time*, 240 F. Supp. 3d at 420-21 (holding that allegations that the IRS improperly initiated a church tax inquiry and examination were irrelevant in considering a petition to quash a third-party summons because "Section 7611 has no

application to third-party summonses because third-party summonses are governed solely by Section 7609," and that "an entity claiming church status [may not] raise defects covered by [Section 7611] in the context of a petition to quash"); *c.f.* H.R. Conf. Rep. No. 98-861 at 1106 ("[S]ubject to the general code provisions regarding third party summonses, the IRS is permitted access to [records held by third parties] *without regard to the requirements of the church audit procedures*." (emphasis added)).

The Court finds that Agent Henry's affidavit makes a prima facie showing that the IRS followed the relevant administrative steps in issuing the FISERV Summons. Because the only administrative defects alleged by Petitioner relate to the IRS's responsibilities under Section 7611 in initiating a church tax inquiry or examination, the Court finds that Petitioner has failed to rebut the IRS's prima facie showing on this factor.

### E.    Conclusion

In sum, the Court finds that the IRS has established a prima facie case that all of the *Powell* factors are satisfied as to the FISERV Summons, and that Petitioner has failed to factually refute the IRS's showing of good faith. Accordingly, the Court RECOMMENDS that the IRS's Motion for Summary Denial be GRANTED, and that Petitioner's Petition to Quash be DENIED.[17]

---

[17] "[I]n proceedings to quash a third-party summons, the government can counterclaim for enforcement." *High Desert Relief*, 917 F.3d at 1181 (citing 26 U.S.C. § 7609(b)(2)(A)). Here, the IRS makes no request for a court order of enforcement in its Motion for Summary Denial. [*See* #9, 14 ("For the foregoing reasons, the Unites States respectfully requests that the Court summarily deny the Petition.")] Accordingly, the Court declines to issue a recommendation regarding the enforcement of the FISERV Summons based on the Motion for Summary Denial.

## IV.    CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that:

(1) The Motion for Summary Denial [#9] be **GRANTED**;

(2) The Petition to Quash [#1] be **DENIED**; and

(3) The Motion for Discovery [#27] be **DENIED**.[18]

DATED:  February 22, 2023                    BY THE COURT:

                                        s/Scott T. Varholak
                                        United States Magistrate Judge

---

[18] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).